# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| REGINALD MOOREHEAD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:08CV1170 HEA/TIA |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation on dispositive matters and for rulings on non-dispositive matters. Having reviewed the case, the undersigned recommends that the petition be dismissed.

### Background

The facts of this case, as recited by the Missouri Court of Appeals, are as follows:

> In 1998, [A.T.] lived with her two children, the victim (Victim), born October 24, 1990, and Victim's brother, born August 13, 1995, on [xxxx] California Street in St. Louis, Missouri. After living on California Street, [A.T.] and her children moved to [xx]14 Keokuk, which was her mother's daycare center, until their home a few houses down, on [xx]08 Keokuk, was ready for them to move into. [Petitioner], who was [A.T.]'s

boyfriend at the time, also lived with [A.T.] and her children on and off until August 2000 when [petitioner] and [A.T.] broke up.

While [petitioner] was living with [A.T.] and her children, he began touching Victim inappropriately. [Petitioner] first began touching Victim, who was approximately eight years old at the time, while they lived on California Street, but the abuse continued at both locations on Keokuk.

[Petitioner] would touch Victim's breasts and her vagina, under the clothes, with his hand. [Petitioner] also put his penis "half in" her vagina. [Petitioner] would also put his finger "half in" her vagina. It hurt Victim when [petitioner] would put his finger and his penis in her vagina. [Petitioner] would also "whoop" or hit Victim for no reason. These incidents occurred on multiple occasions in the two years [petitioner] lived with Victim's family. One night while they lived on California, [petitioner] came into Victim's bedroom, kissed her on the lips, touched her breast under her clothes with one had, and put his other hand on her vagina. On another occasion while they lived on Keokuk, he touched her with his hand on her vagina, her buttocks, and her breasts. On another occasion at their other residence on Keokuk, [petitioner] again touched her breast and vagina. Victim did not tell her mother what [petitioner] was doing because he threatened to kill her with a gun if she told anyone.

In October 2000, following [petitioner]'s and [A.T.]'s break-up, the children were taken into custody of the Division of Family Service because [A.T.] had a drug problem. In December 2000, [A.T.] was visiting her children and Victim said she needed to tell [A.T.] something. Victim told her mother that she had seen [petitioner] at the Quik Trip near [A.T.]'s mother's house and that [petitioner] rode past the house. Victim then told her mother she had something "real bad" to tell her. Victim then asked her mother not to be mad at her and that [petitioner] had been "feeling and rubbing on her." [A.T.] asked her "where" and Victim pointed to her breasts and vagina. Victim also told her mother that it happened while they lived on California and Keokuk. When [A.T.] asked her why Victim had not told her sooner, Victim stated that [petitioner] had told her he was "going to blow her head off."

Resp. Exh. F at 2-3.

Petitioner was convicted by a jury on one count of statutory rape in the first degree, one count of statutory sodomy in the first degree, two counts of child molestation in the first degree, and one count of victim tampering. Petitioner was sentenced to a total prison term of twenty-six years.

On appeal, petitioner argued that the trial court erred when it permitted State witness Luzette Wood, an interview specialist with the Children's Advocacy Center in St. Louis, to testify at trial and when it admitted a redacted version of the victim's videotaped statement to Wood into evidence. Petitioner argued that the videotaped interview of the victim lacked sufficient indicia of reliability and the redaction misled the jury as to the reliability of the interview. The Missouri Court of Appeals found that the videotaped statements contained sufficient indicia of reliability and that the trial court did not abuse its discretion in admitting the evidence.

Petitioner filed a timely pro se Rule 29.15 motion for post-conviction relief. The court appointed counsel, and appointed counsel filed an amended motion, which superseded the pro se motion. See Norville v. State, 83 S.W.3d 112, 114 (Mo. Ct. App. 2002). In the amended motion, petitioner argued that trial counsel was ineffective for failing to investigate and call a Missouri Department of Corrections custodian of records, such as Barbara Knell, to establish his uninterrupted incarceration from

September 29, 1999, through June 27, 2000, and for failing to impeach the victim with her prior inconsistent statements.

The motion court held an evidentiary hearing, during which petitioner and his trial counsel both testified. The court found both that trial counsel's strategy was reasonable and that petitioner had failed to demonstrate prejudice. As to petitioner's first claim, the court found that the Missouri Department of Corrections records would not have established an alibi for petitioner, because the sexual abuse had occurred over a long period of time that began before September 29, 1999, and ended after June 27, 2000. As to the second claim, the witness's prior inconsistent statements had already been explained by the witness on direct examination; therefore, counsel acted reasonably when he did not bring the issue up during cross-examination. The court denied the motion.

On appeal, petitioner argued that the motion court erred in denying the Rule 29.15 motion because counsel was ineffective for failing to present a witness from the Missouri Department of Corrections to show that petitioner was continually incarcerated from September 29, 1999, through June 26, 2000, and because counsel was ineffective for failing to impeach the victim with her prior inconsistent statements. The Missouri Court of Appeals analyzed the issue under the Strickland framework and found both that trial counsel's performance was reasonable and that petitioner had failed to demonstrate prejudice.

Petitioner is currently incarcerated at Missouri's Southeast Correctional Center. Jeff Norman is the Warden of that institution and is the proper party respondent.

**Grounds for Relief**

1. The trial court erred by admitting the victim's testimony after the victim's videotaped statement was admitted into evidence and played to the jury because it constituted "improper enhancement and rehabilitation" of the victim's statement.

2. Trial counsel was ineffective for failing to subpoena records from the Department of Corrections showing that petitioner was incarcerated during periods of time that the victim testified he had abused her.

3. Trial counsel was ineffective for failing to impeach the victim with her prior inconsistent statements, in which she denied that the charged acts had occurred.

4. The trial court erred by admitting mischaracterized evidence by the State during the testimony of petitioner's witness, David Kovac.

**Procedural Default**

Respondent argues that grounds one and four are procedurally defaulted. To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the

same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Id. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. Id.

In ground one, petitioner argues that the trial court erred by allowing both the victim's testimony and her prior videotaped statement because the latter testimony constituted "improper enhancement and rehabilitation" of the victim's statement. Petitioner, however, never made such an objection during the trial. Nor did he raise this claim on direct appeal. Instead, petitioner argued on direct appeal that petitioner's videotaped statement lacked sufficient indicia of reliability. These claims are distinct from one another. Petitioner has not demonstrated cause and prejudice for the default. As a result, ground one is procedurally defaulted.

In ground two, petitioner argues that the trial court erred by admitting mischaracterized evidence by the State during the testimony of petitioner's witness, David Kovac. Specifically, petitioner claims that the prosecutor mischaracterized the evidence when she asked Kovac if he knew what happened to petitioner after he left the Medium Security Institution and Kovac stated "no." Petitioner, however, did not

object to the question during trial. Nor did he raise this issue on appeal. Petitioner has not demonstrated cause and prejudice for the default. As a result, ground four is procedurally defaulted.

For these reasons, petitioner is not entitled to relief on grounds one or four of the petition.

### Standard

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if

it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

To prevail on a claim of ineffective assistance of counsel in the state courts, a defendant must show that counsel's performance was both deficient and prejudicial. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). But to prevail on an ineffective assistance of counsel claim in a § 2254 case, a petitioner

> must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002).

## Discussion

1. Ground Two

In ground two, petitioner argues that trial counsel was ineffective for failing to subpoena records from the Department of Corrections showing that petitioner was

incarcerated during periods of time that the victim testified he had abused her. Specifically, petitioner claims that the Missouri Department of Corrections' records would have shown that he was continually incarcerated from September 29, 1999, through June 26, 2000. Petitioner maintains that this evidence would have contradicted the victim's statements indicating that he had abused her during this time period, because she testified that sometime after her birthday on October 24, 1999, the family moved to the victim's grandmother's daycare center at [xx]14 Keokuk Street, and the victim's mother further testified that they lived at the daycare center from six weeks to three months, up until as late as April 2000. Petitioner further maintains that the lack of evidence regarding his incarceration permitted the prosecutor to argue during closing argument that petitioner had been at the Dismas halfway house during this time period, which would have allowed him to visit [A.T.] and the victim.

During the trial, [A.T] testified that they had lived at each of the three locations between October 1998 through October 2000, but she testified that she could not remember any of the dates during which they had lived at any particular location. [A.T.] did testify, however, that petitioner visited them at each of the three locations.

The victim also testified that petitioner had visited them at each of the three locations, but she could not remember any of the specific dates during which they had lived at any of the three locations, except that he had visited them between her eighth

and tenth birthdays. The victim further testified that petitioner had sexually abused her at each of the three locations.

During the evidentiary hearing before the motion court, trial counsel testified that he knew petitioner had been incarcerated until he was transferred to Dismas House on June 27, 2000. Counsel also knew that petitioner had absconded from Dismas House on July 5, 2000. Counsel testified that he did not want to introduce into evidence petitioner's dates of incarceration with the Missouri Department of Corrections because he wanted to avoid evidence regarding the escape. Counsel further testified that he did not believe such evidence would have been helpful. The motion court found both that the evidence would not have provided petitioner with an alibi and that petitioner was not prejudiced by the omission of the evidence.

The Missouri Court of Appeals analyzed this claim under Strickland, stating:

> Had a witness testified [petitioner] was incarcerated during that timeframe [*sic*], [petitioner] would not have been provided an alibi. The jury could have deduced that the victim lived at the daycare center before [petitioner] was incarcerated. The testimony at trial presented by the victim and her mother was ambiguous regarding the exact dates of their residence at three different homes. Hence, due to the indefiniteness of the time frame of when the victim resided at each house, the jury could have believed the victim's testimony that she was molested at the daycare center by [petitioner] and that the conduct occurred before his incarceration.
>
> Additionally, had a witness testified regarding [petitioner's] incarceration, evidence that [petitioner] absconded from a halfway house could have

been presented to the jury. Therefore, trial counsel's decision not to call a witness to testify about [petitioner's] incarceration could reasonably be a part of trial strategy.

Resp. Exh. K at 3-4.

This Court agrees with the Missouri Court of Appeals. Because the victim and her mother were ambiguous about the dates during which they lived at the three locations, a reasonable jury could have concluded that petitioner visited them at all three places. Further, trial counsel's desire to avoid this evidence was reasonable trial strategy in light of petitioner's escape from Dismas House. The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. As a result, petitioner is not entitled to relief on ground two of the petition.

    2.    <u>Ground Three</u>

In ground three, petitioner argues that trial counsel was ineffective for failing to impeach the victim with her prior inconsistent statements, in which she denied that the charged acts had occurred.

During her videotaped statement with Luzette Wood, the victim testified about how petitioner sexually abused her. However, during her deposition with petitioner's trial counsel, the victim responded "no" whenever counsel asked if petitioner had sexually abused her. The victim testified during direct examination at trial that she did

not want to talk to petitioner's counsel about the abuse because she found it too hard to talk about it with a man. She further testified that she had not told the truth during the deposition. And she testified during direct examination about the sexual abuse petitioner had inflicted on her when she was eight and nine years old.

On cross-examination, petitioner's counsel did not try to further impeach the victim about her prior inconsistent statements. Counsel testified during the evidentiary hearing on the Rule 29.15 motion that he did not think further impeachment of the victim would have been helpful to petitioner's case.

The motion court considered this issue and stated, "[t]he answers [the victim] provided in her deposition in which she denied that the charged acts occurred was asked about during direct examination and explained by the witness. The Court believes it was not unreasonable for defense counsel not to pursue this issue." Resp. Exh. G at 93.

The Missouri Court of Appeals analyzed this issue under the Strickland framework. The court stated:

> the victim testified under direct examination that she denied any molestation by [petitioner] at her deposition. She explained her denials during deposition at trial because she did not want to discuss her victimization in front of a man, [petitioner's] counsel. Thus, impeachment under cross-examination would have been cumulative and unnecessary. [Petitioner] fails to explain how this was not a matter of trial strategy. "If a prior inconsistent statement by a [S]tate's witness does not give rise to

a reasonable doubt as to Movant's guilt, such impeachment evidence is not the basis for a claim of ineffective assistance of counsel." State v. Twenter, 818 S.W.2d 628, 640 (Mo. banc 1991).

Resp. Exh. K at 5.

This Court agrees with the reasoning of the state courts. Petitioner has failed to demonstrate that counsel's performance was either deficient or prejudicial. The Missouri courts' ruling on this issue was not contrary to, or an unreasonable application of, clearly established federal law. As a result, petitioner is not entitled to relief on ground three of the petition.

## Conclusion

For these reasons, petitioner is not entitled to federal habeas relief. Furthermore, petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall docket this action as Reginald Moorhead v. Jeff Norman.

**IT IS HEREBY RECOMMENDED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed without further proceedings.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue. 28 U.S.C. § 2253.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation. Fail to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  8th  day of August, 2011.

  /s/ Terry I. Adelman  
UNITED STATES MAGISTRATE JUDGE
